A. M. ELLER et al., Appellants, v. BOARD OF SUPERVISORS OF HARDIN COUNTY et al., Appellees.

No. 39577.

MAY 14, 1929.

*Lundy & Bateson,* for appellants.

*Peisen & Soper,* for appellees.

DE GRAFF, J.—Sometime in 1916, a petition for a drainage district was filed, and designated as No. 33, in Hardin County, Iowa; and later, a petition was filed for what is known as Drainage District No. 55 in said county. As the lands covered by the petition in No. 33 were included in the lands described in the petition for No. 55, the proceedings were consolidated, resulting in a final order establishing Drainage District No. 55. All necessary preliminary proceedings for the establishment of this district are conceded to be regular and in due form, and the territory originally petitioned for in No. 33 is designated in the completed proceedings as Lateral No. 33. The necessary plats and plans for the improvement were in due form, and were approved by the board in the establishing of Drainage District No. 55. The order establishing this district found in the affirmative all facts necessary to authorize the establishment of the district, and especially to authorize the board to extend the boundaries of said Drainage District No. 55, and the extension of the improve-

ment as recommended by the engineer in his report and map filed July 19, 1920. It further provided that all open work, mains, laterals, and other improvements should be constructed as shown upon the map and as recommended in said report, and that the work should commence within 30 days after the levy, unless, for good cause shown, the board should extend the time, etc.

"The county auditor is directed to fix the date and give required notice for letting the open work contemplated in Sections 1, 2, 3, and 5 as hereinbefore defined."

At this point we have much difficulty in getting a correct idea of the situation, as none of the reports of the engineer or the plats or plans are set out in the abstract or certified to us. We gather, however, from the record that the above described Sections 1, 2, 3, and 5 are open drains, and that the proposed construction in the territory served by Lateral No. 33-G was wholly a tile project. The contracts were let for the open work above described, and assessments were made for the cost of this open work against all of the land in the district, including the lands served by Lateral No. 33-G; and, as we understand the record, that assessment has been paid in full by all parties.

The record further shows that later, other laterals were constructed in the district, but nothing was done with reference to Lateral No. 33-G, except that a cement bulkhead was placed in the bank of the open ditch where the proposed improvement in 33-G would empty into said open ditch.

About the 21st day of June, 1927, the plaintiffs and others filed a petition with the board of supervisors of said county, reading in part as follows:

"The undersigned, your petitioners, herein respectfully state that they are the owners of the following described real estate [describing the lands and the territory to be served by Lateral 33-G] ; that said lands are subject to overflow and too wet for cultivation; and that the public health, benefit, utility, convenience, and welfare will be promoted by constructing part of Div. No. 2 of D. D. No. 55 and by draining, ditching, tiling, leveeing, deepening, widening, and improving or strengthening the same, or by changing the watercourse thereof.

"That the construction petitioned for is known as Lateral 33-G and its tributaries, as shown by the report of E. L. Chamberlain, filed as a report on D. D. No. 33, afterward consolidated with and established as a part of D. D. No. 55 [describing the starting point, route, and termini of the proposed improvement].

"Wherefore your petitioners pray your Honorable Board to appoint a competent and a disinterested engineer and place a copy of this petition in his hands and direct him to examine and survey the aforesaid land and such other lands as are necessary, and locate such improvements as will be conducing to public benefit or utility, or conducive to public health, and make his return to the auditor, as provided by law, and that you construct such drain as may be proper, with laterals, and make such improvements and do such acts as are provided by law and will be of public utility or conducive to the public health, convenience, or welfare."

Acting on this later petition, the board of supervisors appointed an engineer, as requested, who in due time made his report, which, among other things, recommended the abandonment of some laterals, as originally proposed, and the addition of other laterals, and also stated that the original plan shows that the tile recommended were insufficient to take care of the water in the proposed territory, and that all tile should be materially increased in size. Under the original plan, the estimated cost of the instant improvement would have been about $22,000; while, under the report of the later engineer, the cost of the improvement would have been approximately $37,600.

As far as we are able to determine from the unsatisfactory record before us, the board of supervisors, before this report was acted upon, advertised for bids for this improvement, and also appointed a commission to assess benefits. Bids were duly filed by various contractors, and notices were given, as provided by law, to all parties interested, of the filing of this petition and the recommendations of the engineer. When the matter came on for hearing before the board, numerous objections were filed, and a hearing was had thereon. The official action of the board was:

"1. That the bids be rejected.
"2. That the change in plan by the engineer be adopted and confirmed.

"3. That the petition asking for the construction at this time be denied, because at this time the expense involved in the construction of the proposed plan exceeds the benefits which would now be conferred.

"4. The hearing upon the assessment should be continued indefinitely, confirmation of assessment to be made upon a new notice being given in connection with any further construction, except that the auditor be directed to use this classification in distributing the preliminary cost which has accrued to date, and that assessment of said amounts be made upon the various tracts in said subdistricts."

Later, a demand was made upon the board of supervisors to proceed with the construction of the improvement in the latter district, which was refused by official action of the board.

Up to this point, no appeals whatever had been taken by any of the parties interested from any action by the board, either as to the original district or as to the proceedings under the later petition filed by the plaintiffs. Plaintiffs thereupon instituted this proceeding, referring in a general way to the matters hereinbefore set out, and praying that the defendants be forthwith required to do such things as will cause the construction of said lateral to be begun and finished within a reasonable period of time, and that an order of mandamus issue, commanding the defendants and each of them to fulfill such duty, and that the plaintiffs be allowed the costs of the suit and such other relief as to equity seems right and just in the premises.

Defendants in a substituted answer admit the ownership of the land, as described in plaintiffs' petition; admit the official capacity of the defendants, as members of the board of supervisors; admit the proceedings resulting in a due and legal establishment of Drainage District No. 55; admit that the land described as being owned by plaintiffs is within the watershed of Lateral No. 33-G; and deny all other allegations of plaintiffs' petition. They allege, as further defense, that, on a hearing on assessment of benefits in Drainage District No. 55, the construction of all laterals was deferred for an indefinite period; that the assessments made were only for benefits conferred by the mains of said district; and that of that action by the board in connection with the hearing on assessments, plaintiffs herein, or their

grantors, had due notice, and no appeal was taken therefrom. They allege the filing of the petition by plaintiffs on the 21st day of June, 1927, which has been heretofore substantially set out, and that the board employed an engineer; that the engineer filed the report hereinbefore referred to; that hearing was had on said report, and notice given to all parties interested; that no objection was filed to the proposed change of the plan recommended by the engineer, which change was adopted by the board, and no appeal taken therefrom; that the board then found that the expense of installing said drainage system as so changed was out of proportion to the benefits that would be conferred, and in the exercise of their discretion they refused to authorize the construction of said tile drain in accordance with said plan adopted; that, in determining said issue, the board exercised the discretion vested in it, and that the same is not subject to control; and that from the ruling and decision thus made by the board, no appeal was taken. It admitted that demand was made upon it to proceed with the construction, which was refused. By amendment, the board alleges that, because of all matters therein contained, plaintiffs are estopped from objecting to the action of the board of supervisors in connection with the said matters therein set out, and ask that plaintiffs' petition in this case be dismissed. The district court did dismiss plaintiffs' petition.

Regardless of the unsatisfactory state of the record, we have attempted to glean therefrom a fair history of this transaction; and will dispose of the case on its merits.

Briefly stated, Drainage District No. 55 was duly and legally established, and the plans and recommendations of the engineer (which we do not have before us) were duly and properly made and filed. From the record we find that certain main open ditches were to be constructed, and that the territory within the watershed to be served by Lateral 33-G, which emptied into one of said open ditches, was within the boundaries of Drainage District No. 55. Just what the plans showed as to the proposed improvement and laterals in the territory served by 33-G, we have no means of knowing, except that it seems to be conceded by both parties that the improvement in this territory was to be a tile drainage project. The board in the first instance ordered only the construction of the open ditches in said drainage district, none of which, as we understand it, were within the watershed

served by Lateral 33-G. After the open ditches were constructed, in 1921, an assessment was made on all of the lands in the drainage district, to pay for the construction of said open ditches, and plaintiffs, with others owning land within the district, paid that assessment.

In 1927, the plaintiffs filed with the board the petition hereinbefore set out, in substance. It will be noted, in passing, that this is not a request on the board to proceed with the construction of the improvement 33-G as planned and laid out by the original engineer, but that it goes further, and requests the board to appoint a new engineer and place a copy of the petition in his hands, and directs him to examine and survey the aforesaid land and such other lands as are necessary, and to locate such improvement as will be conducive to the public benefit and utility, or conducive to the public health, and to make his return to the auditor, as provided by law, and that he should construct such drain as may be proper, with laterals, and make such improvements and do such acts as are provided by law and will be of public utility or conducive to the public health, convenience, or welfare.

The board accepted said petition, and proceeded to carry out the requests of the plaintiffs. As before stated, the engineer was appointed, and made his report and recommendations, among which was an increase in the size of the tile, which necessarily made an increase in the total cost of the improvement. Due notice of this report and recommendation was given to all parties interested, including the plaintiffs. Numerous objections were filed, and the matter was taken up by the board, and a hearing had thereon. The board approved the changes recommended by the engineer, but refused to establish the district, giving as a reason therefor that the expenses of such improvement would exceed the benefits, and dismissed the plaintiffs' petition. No objections were made by the plaintiffs to the recommendations of the engineer, and no appeal was taken by any of the plaintiffs from the action of the board in dismissing the petition. Thereafter, a written demand was made on the board that the board "forthwith" proceed to do such things as will cause the construction of said lateral (33-G) to be begun and finished "within a reasonable period of time." On the 3d day of January, 1928, this demand was refused.

The controlling question, therefore, is whether or not, under this situation, the plaintiffs are entitled to a writ of mandamus to compel the board of supervisors of Hardin County to construct the proposed improvement or to do those things which will result in the construction of said improvement in the territory served by Lateral 33-G. Plaintiffs are not very definite in their demands. They do not specifically state whether they wish an order compelling the board to construct the drainage project 33-G as originally mapped and planned when Drainage District No. 55 was established, or whether they wish a project constructed as mapped and planned by the last engineer.

The construction of Lateral 33-G was evidently abandoned. No tax to pay for it was assessed. Plaintiffs themselves were dissatisfied with it, and asked for a new survey and location, not of Lateral 33-G, but of "such an improvement as will be conducive to public health," etc. The board accepted and acted on this petition as one for a new improvement, and appointed an engineer. The engineer made report, and objections were filed and hearing held accordingly. The board, responsive to plaintiffs' petition as it was properly interpreted by the board, found that the expense of constructing the improvement as reported by the engineer would exceed the benefits, and postponed indefinitely the matter of making assessment for this lateral. In effect, plaintiffs are asking a writ of mandamus to compel the board to construct an improvement which has not only not been established, but the establishment of which plaintiffs submitted to the judgment and discretion of the board, and the board denied same. Plaintiffs on these facts are not entitled to a writ of mandamus. —*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.